UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| Kyle C.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:19-CV-127-MGG |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff, Kyle C.[2], on behalf of deceased Daniel K. C. ("Mr. C") seeks judicial review of the Social Security Commissioner's decision denying Mr. C's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. This Court may enter a ruling in this matter based on parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). For the reasons discussed below, the Court **REMANDS** the decision of the Commissioner of the Social Security Administration ("SSA").

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

[2] Plaintiff Kyle C. was substituted in this action on August 4, 2020. Social Security claimant Daniel K. C. died on May 31, 2020. Plaintiff is his son and was substituted as plaintiff in this action after Daniel K. C.'s death.

I. **OVERVIEW OF THE CASE**

Mr. C applied for DIB and SSI on November 5, 2015. In both applications, he alleged a disability onset date of December 19, 2012. Mr. C's applications were denied initially on June 26, 2015, and upon reconsideration on August 12, 2015. Following a hearing on September 21, 2017, the Administrative Law Judge ("ALJ") issued a decision on February 28, 2018, which affirmed the Social Security Administration's denial of benefits. The ALJ found that Mr. C suffers from the following severe impairments: degenerative disc disease, degenerative joint disease, and right sacroiliitis. The ALJ also found that none of Mr. C's severe impairments, nor any combination of his impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Further, the ALJ found that Mr. C had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b)[3] with certain additional limitations. In view of Mr. C's RFC, the ALJ found that Mr. C was unable to perform past relevant work. However, the ALJ concluded, based on the testimony of the vocational expert, that Mr. C had the ability to meet the requirements for employment as a sales attendant, pricer, and cashier II as those jobs are defined by the Dictionary of Occupational Titles. Based upon these findings, the ALJ denied Mr. C's claims for DIB and SSI.

---

[3] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Report and Recommendation will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

2

## II. DISABILITY STANDARD

In order to qualify for DIB or SSI, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for DIB and SSI under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is capable of performing other work. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at every step except the fifth. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## III. STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence

3

has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see also Summers v. Berryhill,* 864 F.3d 523, 526 (7th Cir. 2017). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004).

An ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ is not permitted to "cherry-pick" facts from the record to support a finding of non-disability. *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010). Further, an ALJ may not ignore an entire line of evidence contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 888 (7th Cir. 2001). The ALJ is not required to address every piece of evidence in the record, but he must at least provide a glimpse into the reasoning behind his analysis to build the requisite "logical bridge" from the evidence to his conclusions. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008).

4

**IV.   ANALYSIS**

   **A.   Issues for Review**

In challenging the ALJ's decision, Mr. C points out two alleged errors in the ALJ's decision to deny Mr. C of DIB and SSI. First, Mr. C argues that the Commissioner failed to properly consider the opinions of his treating physician Dr. Lutz and of his physical therapist, Mr. Troy Smith. Second, Mr. C argues that the ALJ erred in considering his subjective symptoms. Each issue will be addressed in turn.

   **B.   Errors in Weighing Dr. Lutz's Opinion**

In crafting an RFC, the ALJ must consider "all of the relevant medical and other evidence" in the record. 20 C.F.R. § 404.1545(a)(3); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). Here, the ALJ supported his RFC analysis by presenting a summary of Mr. C's medical records, including a medical source statement dated September 10, 2017, from Mr. C's treating physician, Dr. David Lutz, M.D. The ALJ summarized Dr. Lutz's medical source statement as follows:

> Dr. Lutz opined that the claimant could stand/walk a total of less than two hours in an eight-hour workday. Dr. Lutz opined that the claimant required two to four unscheduled breaks in a typical workday, lasting fifteen minutes each. He could rarely lift and carry less than ten pounds, and he could never lift and carry ten pounds or more. Overall, Dr. Lutz opined that the claimant was permanently/totally disabled and unable to be gainfully employed.

[DE 8 at 57-58].

The ALJ then afforded "limited weight" to Dr. Lutz's opinion, finding that his opinion was inconsistent with his own treatment notes. [DE 8 at 58]. The ALJ also noted that Dr. Lutz cited to both a physical therapist's evaluation and Mr. C's subjective

5

symptoms in his opinion, both of which the ALJ found to be inconsistent with the record. Finally, the ALJ stated that "an opinion on whether an individual is disabled goes to an issue reserved to the Commissioner." [DE 8 at 58].

Mr. C notes that the applicable regulations require the ALJ to give "controlling weight" to treating doctors' opinions if they are well supported by clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527; SSR 96-2P; *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009). As such, Mr. C contends that the ALJ erred by failing to properly consider the mandatory regulatory factors before Dr. Lutz's treating source opinion and is unsupported by sound reasoning.

ALJs are required to consider every medical opinion in a claimant's records. 20 C.F.R. §404.1527(c). A medical opinion from a treating source is generally given more weight because of the medical professional's longitudinal experience with the claimant's impairments and treatment. *Id.* § 404.1527(c)(2). A treating source opinion is given controlling weight unless the ALJ finds that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is inconsistent with "the other substantial evidence" in the case record. *Id.* Where a treating source opinion is not given controlling weight, the ALJ must consider the examining relationship, treatment relationship, length of relationship and frequency of visits, and nature and extent of the relationship to explain why the opinion is discounted. *Id.* § 404.1527(c); *see also Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). Mr. C contends that the ALJ did not indicate if or how he considered the Section

6

1527(c) factors in assigning little to no weight to Dr. Lutz's opinion, and that the ALJ failed to provide the requisite logical bridge in his reasoning.

As an initial matter, the ALJ erred in finding that Dr. Lutz improperly relied on the physical therapist's opinion, since a physical therapist is not an acceptable medical source as defined by the regulations. Dr. Lutz only mentioned the physical therapist, Mr. Smith, once in the opinion when discussing why Mr. C's medical conditions limit Mr. C's ability to lift and carry. Dr. Lutz stated that Mr. C had "increased pain with lifting (as also noted by therapist.[)]" [DE 8 at 893]. Dr. Lutz did not solely rely on Mr. Smith's opinion; he simply noted that the Mr. Smith's notes supported his own opinion that Mr. C's pain would limit his ability to lift and carry. This is not reliance on the physical therapist's opinion, as the rest of the multi-page opinion does not reference Mr. Smith's opinion.

Similarly, the ALJ discredited Dr. Lutz's opinion because he found that Mr. Smith based his opinion solely on Mr. C's subjective complaints. As discussed above, Dr. Lutz only discussed Mr. Smith's opinion in relation to pain with lifting, and therefore did not erroneously rely on Mr. Smith's opinion. Moreover, Mr. Smith completed an hour and fifty minute evaluation that included objective testing. [DE 8 at 885]. Mr. Smith found moderately antalgic gait, limping, stiffness and reduced trunk rotation while walking. [*Id.*]. Mr. Smith also performed repetitive movement tests, static strength tests, pain profiles, and handling tests during the functional capacity evaluation. [DE 8 at 885-86]. This is not an opinion based solely on subjective symptoms, but one rooted in independent observations and objective testing. While Mr.

7

Smith did include discussion of Mr. C's subjective symptoms, he did not solely rely on those subjective symptoms in the functional capacity evaluation. The ALJ erred in dismissing Dr. Lutz's opinion due to his supposed reliance on the physical therapist's notes.

The ALJ also incorrectly found that Dr. Lutz's opinion relied too much on Mr. C's subjective symptoms as opposed to objective medical evidence. The Commissioner argues that Dr. Lutz failed to "cite any specific objective findings in support of his opinion," and that all opined limitations were attributed to Mr. C's subjective pain complaints. [DE 17 at 6]. However, Dr. Lutz specifically referenced both a lumbar MRI from April 2014 and a lumber x-ray from August 2014. [DE 8 at 889]. The lumbar MRI showed foraminal stenosis, severe disc degeneration, and facet hypertrophy. [*Id.*]. Dr. Lutz also noted that Mr. C did not improve with epidurals and physical therapy, and that he required multiple pain meds. [DE 8 at 890]. While Dr. Lutz did reference Mr. C's subjective pain throughout the opinion, he also pointed to objective testing done, including imaging and a functional exam from the physical therapist. Dr. Lutz did not solely rely on Mr. C's subjective symptoms, and the ALJ erred in failing to consider the objective evidence discussed in the opinion.

C.  **Subjective Symptoms**

Once an ALJ decides that the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which he is limited in performing work-related activities.

8

20 C.F.R. § 404.1529 (b)-(c). In doing so, the ALJ must consider objective medical evidence and "other evidence," which includes statements made by the individual, his daily activities, medications, and other factors concerning functional limitations. *Id.* § 404.1529 (c)(2)-(3). In determining the extent to which the claimant's symptoms affect his capacity to perform basic work activities, the ALJ must consider whether the subjective symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* § 404.1529(c)(4).

The ALJ's findings as to the claimant's allegations of subjective symptoms and credibility are treated deferentially and will only be overturned if "patently wrong" or "lack[ing] explanation or support." *Cullinan v. Berryhill*, 878 F.3d 589, 603 (7th Cir. 2017) (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). "A [subjective symptom] determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Id.*

Here, the ALJ overemphasized the reports of Mr. C's pain being controlled while ignoring the objective evidence. The ALJ found that Mr. C's testimony regarding his subjective symptoms was not well supported by his ability to prepare simple meals, shop in store, and drive a car. [DE 8 at 52]. The ALJ also noted that Mr. C completed chores, "such as vacuuming, washing dishes, and laundry, assuming he takes rest breaks after fifteen minutes of standing." [*Id.*]. The ALJ also noted that Mr. C testified that he could mow his lawn, given several rest-breaks. [*Id.*]. However, the ALJ also noted that such breaks "are not well supported through the treatment notes." [*Id.*].

9

The ALJ also discredits Mr. C's complaints of medication side effects, as "the medical treatment records do not document ongoing findings of significant limitations of function … arising from side effects per any treating physician despite changes in dosages or medication types." [DE 8 at 52]. The ALJ also found that Mr. C's reports of worsening pain were not supported my treatment notes showing 1/10-4/10 pain levels in 2016 and 2017. [DE 8 at 53]. Finally, the ALJ found that Mr. C's reports of needing help with yardwork and household chores was not supported by the record. [*Id.*].

The ALJ failed to consider a multitude of factors in discussing Mr. C's subjective symptoms, and the ALJ relied too heavily on the numeric scale used to discuss his pain. The ALJ notes that Mr. C regularly reported pain at 3/10 or 4/10 to his physicians. The ALJ failed to consider that much of Mr. C's other subjective symptom reports support his complaints of pain, despite his supposed conservative numbers. For instance, Mr. C underwent a Physical Capacity Evaluation ("PCE") in August 2017, wherein he complained of pain at a 4/10 during an occasional material handling ("OMH") test. [DE 8 at 886]. However, despite only complaining of pain at 4/10, his pain increased to 6/10 during the testing, and he failed to complete any of the seven tests due to pain. [*Id.*]. Despite only rating his pain at 4/10, the PCE noted that his pain profile placed him in the "moderate to high" category for pain, and that he had a 68% functional impairment. [*Id.*]. While Mr. C was stating his pain was at 4/10, he was still unable to complete physical testing due to pain, which would support Mr. C's allegations of pain. Relying solely on the numbers while failing to consider the other indicators of pain during testing is in error.

The PCE further noted that there was no evidence supporting the presence of symptom magnification or exaggeration. [*Id.*]. Mr. C met only 23% of the criteria during the PCE. [*Id.*]. The PCE is consistent with Mr. C's testimony that his pain worsened with activities and was only partially managed with medication and modification of activities. [DE 8 at 15-20, 23-24]. Mr. C's mother also completed a third-party function report that was consistent with Mr. C's need for help with household chores and yardwork. [DE 8 at 325]. Physical therapy treatment notes also noted Mr. C had increased pain with activities, and that he is only able to mow his lawn if he does so in three stages with breaks. [DE 8 at 881]. Mr. C also stated that his son, aged fourteen at the alleged onset date and aged sixteen at the time of the hearing, assisted with most of the household chores. [DE 8 at 13, 15-16, 312-13]. The ALJ did not consider or discuss the numerous consistencies in Mr. C's allegations of pain, and instead relied solely on his numeric pain scale.

The ALJ also erred in failing to explain why Mr. C's report of a need for breaks are inconsistent with the record. The ALJ noted that no treatment notes support the need for breaks while performing household chores or mowing the lawn, but the ALJ fails to explain how treatment notes would verify such information. A lack of objective evidence to support subjective symptoms is not, on its own, enough to dismiss a claimant's reports about his daily activities. *See Beardsley v. Colvin*, 758 F.3d 834, 837-38 (7th Cir. 2014); *Zurawksi v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001)(remanding where the ALJ's discounting of a claimant's subjective symptoms could not be upheld because it was based solely on "inconsistencies" between the objective medical record and the

11

daily activities). Furthermore, Mr. C's mother and physical therapist reported that Mr. C required breaks or other help to complete chores. [DE 8 at 312-13, 881]. This evidence supports Mr. C's allegations of a need to take breaks while performing chores. The ALJ did not provide the requisite logical bridge between the evidence and his conclusions.

Mr. C makes other arguments regarding his subjective symptom allegations and the opinion of Mr. Smith, his physical therapist, but since the Court is remanding based on errors in the subjective symptom analysis and in the analysis of Dr. Lutz's opinion, the Court need not discuss those other arguments at this time. The ALJ will have the opportunity to fully discuss and reevaluate the rest of Mr. C's allegations on remand. This is not to say that there are no other errors in the subjective symptom allegations, but the Court need not discuss them when errors are already present in the ALJ's analysis and discussion.

## V. CONCLUSION

For the reasons stated above, the ALJ failed to support his decision finding Mr. C not disabled with substantial evidence. *See Kastner v. Astrue,* 697 F.3d 642, 646 (7th Cir. 2012); *Scott,* 297 F.3d at 595. Accordingly, the Commissioner's decision is **REMANDED** for further consideration consistent with this opinion.

**SO ORDERED** this 4th day of December 2020.

s/Michael G. Gotsch, Sr.<br>
Michael G. Gotsch, Sr.<br>
United States Magistrate Judge